OPINION
{¶ 1} In this reopened appeal, defendant-appellant Shawn Greene contests the decision of the Mahoning County Common Pleas Court which denied his motion to dismiss with prejudice on double jeopardy grounds. In determining whether appellant received ineffective assistance of appellate counsel in the original appeal, we must determine whether a new trial was barred by double jeopardy where appellant's motion for a mistrial was granted after the jury was empanelled due to newly identified witnesses. For the following reasons, upon reopening and supplementation of appellate counsel's deficiencies, the trial court's decision is reaffirmed.
 STATEMENT OF THE CASE PROCEDURAL HISTORY {¶ 2} The decedent, Mr. Daniel Wilkerson, had six children with Ms. Bell. Appellant Shawn Greene was living with Ms. Bell on April 25, 1999, when Mr. Wilkerson arrived at the residence. After words were exchanged, appellant shot Mr. Wilkerson in the abdomen, and Mr. Wilkerson died.
 {¶ 3} Appellant was indicted for murder with a firearm specification. A jury was empanelled on October 23, 2000. A jury view of the crime scene was conducted. Before opening statements, the jury was in recess as the parties were awaiting an appellate decision dismissing appellant's interlocutory appeal on an evidentiary matter. At that time, Assistant Prosecutor Kelly Johns received a note that Ms. Bell wished to see her in the Victim-Witness Office.
 {¶ 4} Ms. Bell had a teenage boy with her named Bryant Butler who was a potential witness that she mentioned by first name in earlier interviews. He claimed to have been playing basketball with two other boys when the victim exited the house after being shot. Mr. Butler was prepared to testify that he saw appellant follow the victim out of the house and ask, "Who's the bitch now?" Such testimony would be incriminating considering appellant's self-defense strategy.
 {¶ 5} Attorney Johns immediately informed the court and defense counsel that there appeared to be three new witnesses. Appellant moved for exclusion of the testimony of these witnesses. Instead, the court offered the options of a continuance or a defense motion for a mistrial. The defense had the opportunity to interview Ms. Bell and Mr. Butler before deciding which option to pursue. Appellant asked for a mistrial, which the trial court granted.
 {¶ 6} Appellant then filed a motion to dismiss with prejudice on the basis of double jeopardy. The trial judge recused herself from ruling on the issue, and a different judge held a hearing on the double jeopardy issue. At the December 27, 2000 hearing, testimony was provided by Defense Attorney Yarwood, Attorney Johns, and Ms. Bell.
 {¶ 7} Attorney Yarwood testified as to his memory of Ms. Bell's statement at an interview after the mistrial. He said the interview was attended by himself, codefense counsel, and Attorney Johns. He stated that Ms. Bell disclosed that she gave Attorney Johns the witness's first name and address approximately a week before trial. (Tr. 117, 138).
 {¶ 8} Ms. Bell then testified and revealed that Mr. Butler lived with his brother for at least a year prior to the first trial and that she often visited his brother. (Tr. 83). She then confusingly stated that Mr. Butler did not live with his brother but stayed on Avondale with his cousin whose name she did not know. (Tr. 81, 98, 100). At one point, Ms. Bell answered that approximately one week before trial, she told Attorney Johns that Mr. Butler stayed on Breaden but that she did not give her an address. (Tr. 84, 85). She said she never told anyone that Mr. Butler stayed on Avondale. (Tr. 101). She then pointed out that her affidavit stated that she never told Attorney Johns his last name or address. Later, she said she told Attorney Johns the name Brian and nothing else. (Tr. 104).
 {¶ 9} Attorney Johns testified that Ms. Bell had only ever given her a first name, an incorrect one at that; she told her a boy named Brian was playing basketball behind the house. Attorney Johns stated that Ms. Bell repeatedly told her that she did not know his last name, address, or how she could get in touch with him. (Tr. 55, 172, 184). Attorney Johns insisted that Ms. Bell did not tell her what street this Brian lived on. (Tr. 173). She concluded that it was not until Ms. Bell showed up for trial with Mr. Butler that she became aware of his last name and place or street of residence.
 {¶ 10} On December 28, 2000, in a three and one-half page judgment entry, the court denied appellant's motion to dismiss. The court believed that in the interviews with Ms. Bell, Attorney Johns only ever learned the witness's first name. The court disbelieved that Ms. Bell gave Attorney Johns an address. The court found that both Attorney Yarwood and Attorney Johns were credible and that Ms. Bell was the less credible witness. Since Attorney Yarwood's testimony was based solely upon what Ms. Bell told him, the court gave credence to the claims of Attorney Johns that she only knew a first name. Although the court stated that there should have been a more thorough investigation in the neighborhood to find the boys playing basketball, the court found that the prosecutor did not intentionally engage in misconduct in order to goad appellant into seeking a mistrial.
 {¶ 11} Appellant's case was then tried to a jury who convicted him as charged. On June 13, 2002, the court sentenced appellant to three years for the firearm specification to be followed by fifteen years to life for the murder. In his original appeal, appellant set forth four assignments of error. His fourth assignment of error argued that the trial court erred in denying appellant's motion to dismiss with prejudice under the double jeopardy clause.
 {¶ 12} This court overruled all four assignments and affirmed his coniviction. State v. Greene, 7th Dist. No. 02CA122, 2004-Ohio-1540. In overruling his fourth assignment, we noted that appellant failed to submit the transcript of the double jeopardy hearing where testimony was presented to establish the basis for the trial court's finding that there was no intentional calculation to invite a mistrial. Id. at ¶ 60. Thus, we found that we could not fully review the trial court decision. Id.
 {¶ 13} Thereafter, we granted appellant's application to reopen, finding that there was a genuine issue of material fact as to whether appellant received ineffective assistance of appellate counsel when his original appellate counsel failed to order, read and file the double jeopardy hearing transcript for purposes of the assignment of error regarding this issue. See App.R. 26(B)(2)(c) (allowing reopening due to errors that were considered on an incomplete record). This reopened appeal is now before us with the double jeopardy transcript and a re-briefed assignment of error number four.
 ASSIGNMENT OF ERROR {¶ 14} Appellant sets forth his assignment of error and issues presented as follows:
 {¶ 15} "SHAWN GREENE WAS DENIED HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS APPELLATE ATTORNEY FAILED TO OBTAIN, REVIEW, AND SUBMIT INTO THE RECORD A TRANSCRIPT OF THE DECEMBER 27, 2000 HEARING ON MR. GREENE'S MOTION TO DISMISS."
 {¶ 16} "1. Did Mr. Greene's appellate attorney's failure to submit the December 27, 2000 hearing transcript constitute deficient performance?"
 {¶ 17} "2. Upon review of the December 27, 2000 hearing transcript, did the trial court abuse its discretion in overruling Mr. Greene's motion to dismiss?"
 {¶ 18} "3. Was Mr. Greene prejudiced by appellate counsel's failure to submit the December 27, 2000 hearing transcript into the record?"
 {¶ 19} Because this is a reopened appeal, the issue of effective assistance of counsel lingers from our initial reopening entry. In reviewing for ineffective assistance of appellate counsel, we use the test set forth in Strickland v.Washington (1984), 466 U.S. 668 and adopted in State v.Bradley (1989), 42 Ohio St.3d 136: (1) deficient performance by counsel that (2) had a reasonable probability of prejudicing the outcome. State v. Spivey (1998), 84 Ohio St.3d 24, 25. Still, the issue of prejudice here is the same as answering the ultimate issue of whether the trial court erred in denying appellant's motion to dismiss with prejudice. Thus, we shall move on to this issue.
 {¶ 20} A criminal defendant is protected from multiple prosecutions for the same offense by the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution made applicable to the states through the Fourteenth Amendment. Statev. Loza (1994), 71 Ohio St.3d 61, 70, citing Oregon v. Kennedy
(1982), 456 U.S. 667. However, a retrial is not barred after the trial court grants a defendant's motion for a mistrial. Id.
 {¶ 21} There is a limited exception where the defendant's motion for a mistrial is incited by prosecutorial misconduct that was intentionally calculated to cause or invite a mistrial. Id. "Only where the prosecutorial conduct in question is intended to `goad' the defendant into moving for a mistrial may defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." Id.[1]
 {¶ 22} In that capital case of Loza, it was discovered during cross-examination of the state's final witness that the chemical analysis of the defendant's clothing did not reveal the presence of blood. The results of this chemical analysis were not disclosed to the defendant prior to trial. Apparently, these results challenged the credibility of the main witness whose family the defendant was alleged to have killed. A mistrial was granted. The defendant then moved to dismiss on double jeopardy grounds, alleging the state intentionally provoked a mistrial. The trial court denied the motion, and the appellate court affirmed that decision.
 {¶ 23} Thereafter, the Ohio Supreme Court reviewed the record and concluded that the state was not aware of the chemical analysis report until the morning of the last day of trial and that there was no indication that the state engaged in an intentional act of deception or intentionally withheld exculpatory evidence. Id. at 71. The Ohio Supreme Court thus affirmed the defendant's death sentence.
 {¶ 24} In the United States Supreme Court case relied on by the Ohio Supreme Court, a concurring justice advised that the reviewing court could consider factors such as: (1) whether there was a sequence of overreaching prior to a single prejudicial incident; (2) whether the prosecutor resisted or was surprised by the request for a mistrial; and (3) the findings of the court concerning intent. Kennedy, 456 U.S. at 680 (Powell, J., concurring).
 {¶ 25} Here, there was no indication of other incidents of over-reaching prior to this unidentified witness appearing. Further, the prosecution only agreed to the mistrial request after the defense refused its suggestions and the court's offer of a continuance. The court's giving counsel options further lessens any alleged prejudice. Additionally, the trial court made detailed findings and conclusions.
 {¶ 26} The trial court occupied the best position from which to weigh the evidence and judge the credibility of each witness by studying demeanor, voice inflection, and gestures. See, e.g.,Seasons Coal Co. v. Cleveland (1994), 10 Ohio St.3d 77, 80;State v. DeHass (1967), 10 Ohio St.2d 230, 231. The trial court's credibility determinations were paramount here.
 {¶ 27} The court believed the testimony of the assistant prosecutor when she stated that Ms. Bell gave her only an incorrect first name for the witness. The court found Attorney Johns' claim that she was not given a street name or address credible. Attorney Yarwood was also found to be credible, but his claims were solely based upon the statements of Ms. Bell, who was found to be an inconsistent and less credible witness.
 {¶ 28} We shall not substitute our judgment for that of the trial court on this credibility issue. There is no reason to determine that the trial court lost its way in determining that the prosecution did not deliberately engage in misconduct with the intent to goad appellant into seeking a mistrial. Although the state could have been more diligent, a lack of diligence in pursuing leads is not synonymous with prosecutorial misconduct.
 {¶ 29} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Waite, J., concurs.
DeGenaro, J., concurs.
[1] The state's brief initially argues that we are not permitted to review the December 27, 2000 double jeopardy hearing transcript because we can only review the record that existed at the time the first trial court made its October 2000 decision to grant a mistrial. However, we are not reviewing the propriety of the granting of a mistrial. We are reviewing the second court's decision regarding whether double jeopardy applies, which is based upon the record made on December 27, 2000 concerning the issue of the state's intent. Thus, this position espoused by the state here is invalid.